IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

DARLENE V. ODEN,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C13-2081

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    A.   Oden's Employment Background . . . . . . . . . . . . . . . . . . 4
    B.   Administrative Hearing Testimony . . . . . . . . . . . . . . . . . 4
        1.   Oden's Testimony . . . . . . . . . . . . . . . . . . . . . . . 4
        2.   Vocational Expert's Testimony . . . . . . . . . . . . . . . . . 5
    C.   Oden's Medical History . . . . . . . . . . . . . . . . . . . . . . 6

IV.  CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . 9
    A.   ALJ's Disability Determination . . . . . . . . . . . . . . . . . . 9
    B.   Objections Raised By Claimant . . . . . . . . . . . . . . . . . . 11
        1.   Consultative Examining Sources . . . . . . . . . . . . . . . 12
            a.   Dr. Munns and Sarah Douglas . . . . . . . . . . . . . 12
            b.   Dr. Roland's Opinions . . . . . . . . . . . . . . . . . 14
        2.   Credibility Determination . . . . . . . . . . . . . . . . . . 15
        3.   Hypothetical Question . . . . . . . . . . . . . . . . . . . 18
    C.   Reversal or Remand . . . . . . . . . . . . . . . . . . . . . . . 19

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VI.  ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Darlene V. Oden on December 4, 2013, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title XVI supplemental security income ("SSI") benefits. Oden asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her SSI benefits. In the alternative, Oden requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not

2

only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even

though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

### III. FACTS

#### A. Oden's Employment Background

Oden was born in 1954. In the past, Oden worked as an inspector, assembly-line sorter, laborer, and cook. Most recently, she worked as a cook at the Salvation Army in 2009.

#### B. Administrative Hearing Testimony

##### 1. Oden's Testimony

At the administrative hearing, Oden testified that she suffers from PTSD due to a sexual assault she was subject to as a teenager in 1973. Oden also stated that she suffers from depression. According to Oden, "I cry a lot . . . I have no place to live and I don't have no income and it's hard for me to, to abide with society without no income."[1] Oden further indicated that she has difficulties with anxiety. She described her symptoms as sweating, shaking, and trembling in social situations.

Oden also discussed her physical impairments. She stated that she suffers from asthma and obstructive pulmonary problems. She testified that "when I try to move around like a flight of steps it'll set it off. I can't walk up and down the steps."[2] Oden's attorney questioned Oden about specific functional abilities:

> Q: Do you have problems standing?
> A: Yes.
> Q: What problems do you have with standing?
> A: If I'm standing a long time my legs get to burning and then I have to sit down.
> Q: How long is a long time?

---

[1] Administrative Record at 44.

[2] Administrative Record at 46.

4

> A: I'll say about if I stand a[n] hour it's going to start burning so I have to sit down.
> Q: And do you have any problems sitting?
> A: Yes, with my knees for a long length of time. Like I say if I'm in a car driving for like here [(Waterloo)] to Cedar Falls I got to get out and stretch because my legs bother me. . . .
> Q: Okay. And do you have problems with reaching or lifting your arms over your head?
> A: My right arm, my right arm. . . .
> Q: Okay. And what problem, what problems do you have reaching above your shoulders?
> A: It gets a burning and sting and I have sharp pains in there and this hand if I'm holding something or trying to stir something I'll drop it because I can't continue in, in a motion as to keep stirring.

(Administrative Record at 47-48.) Oden also indicated that she has difficulty gripping and taking tops off of items. She also stated that she has limitations with lifting items, such as a heavy garbage can, a basket with wet clothes, or her three-year-old grandson. Lastly, Oden testified that she believes she is unable to work due to her impairments and the side effects of the medications she takes for her impairments.

### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Julie Svec with a hypothetical for an individual who is able to lift and carry:

> with the left up to 20 pounds, with the right less than five pounds, stand and walk four hours of an eight-hour workday with the understanding that [the] individual can stand or walk 20 to 30 minutes continuously. No restrictions in sitting as far as the number of hours in a workday but no more than one-hour continuously. Never do the following, stoop, crawl or kneel with the right major upper extremity, no lifting with the right shoulder, no gross manipulation with the right upper extremity, capable of constant, simple, repetitive tasks, no concentrated exposure to dust, odors, fumes or pulmonary irritants.

(Administrative Record at 55-56.) The vocational expert testified that under such limitations, Oden could not perform her past work as an assembly-line sorter.[3] The ALJ provided the vocational expert with a second hypothetical for an individual who can:

> lift or carry occasionally 50 pounds, frequently 25, stand or walk six hours of an eight-hour workday, no more than two hours continuously. No restrictions on sitting, never stoop, crawl or kneel, no overhead work with the right major upper extremity[.] . . . Constant, simple, repetitive tasks, no concentrated exposure to dust, odors, fumes, [or] pulmonary irritants.

(Administrative Record at 56.) The vocational expert testified that under such limitations, Oden could perform her past relevant work as an assembly-line sorter.

### C. Oden's Medical History

On April 28, 2011, Oden met with Dr. Suzanne E. Munns, M.D., and Sara M. Douglas, ARNP, for a consultative physical examination. Oden's chief complaints were right hand numbness, knee pain, migraine headaches, breathing problems, rheumatoid arthritis, and history of a heart attack on March 25, 2011. Upon examination, Dr. Munns and Douglas drew the following conclusions:

> [Oden] has multiple joint problems at this time. She has definite right hand and arm weakness that would make it very difficult for her to grip or handle objects. She has an extreme right shoulder problem which is very painful. . . . I suspect she may have a rotator cuff tear. This may be the source of the weakness and numbness she gets in her right hand. She has limitations of her right knee with pain. . . . She does have a cardiac problem with ongoing chest pain and shortness of breath. There may be some asthma mixed in with her shortness of breath, though her asthma is being treated. . . . She has some neck pain which sounds more like degenerative

---

[3] The ALJ did not ask the vocational expert whether there were other jobs in the national economy that an individual with those limitations could perform.

> joint disease and not rheumatoid arthritis, but she would need
> further evaluation of this. Her headaches are a daily problem
> for her but it sounds like she is receiving treatment of these.

(Administrative Record at 342.) Dr. Munns and Douglas opined that Oden would have the following physical abilities: (1) The ability to lift about 20 pounds with her left arm and less than five pounds with her right arm; (2) extreme difficulties in lifting with her right shoulder; (3) the ability to stand for about 20 to 30 minutes before having knee pain, chest pain, and shortness of breath; (4) the ability to walk about half of a block before getting short of breath and having knee pain; (5) the inability to stoop, kneel, or crawl due to knee pain; and (6) the need to avoid environments with dust or fumes which trigger her asthma.

On June 30, 2011, Oden met with Dr. Muhammad Asad Khan Suri, M.D., for a psychiatric evaluation. Oden reported that her primary complaint was depression. Dr. Suri noted that Oden's symptoms included: crying spells, hopelessness, sadness, anhedonia, tiredness, and lethargy. Upon examination, Dr. Suri diagnosed Oden with depressive disorder. Dr. Suri recommended medication as treatment.

On August 18, 2011, Oden was referred by Disability Determination Services ("DDS") to Dr. Carroll D. Roland, Ph.D., for a psychological evaluation. Dr. Roland noted that at the time of the evaluation, Oden was being treated for anxiety and depression. Dr. Roland also noted that Oden suffered from PTSD stemming from a sexual assault when she was 17 years old. Upon examination, Dr. Roland found that Oden's memory was "intact for recent and remote events. Immediate retention and recall was impaired as [she] was unable to remember any of 3 unrelated words following a five minute delay."[4] Dr. Roland opined that Oden's memory problems indicated difficutly remembering 2-step instructions. Testing showed symptoms consistent with anxiety disorder and significant

---

[4] Administrative Record at 378.

7

depression. Dr. Roland also suspected that Oden had low borderline intellectual functioning. Dr. Roland diagnosed Oden with major depressive disorder, anxiety disorder, alcohol abuse in early remission, PTSD, and dependent personality traits.

On August 29, 2011, Dr. Dee Wright, Ph.D., reviewed Oden's medical records and provided DDS with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Oden. Dr. Wright diagnosed Oden with major depressive disorder, anxiety disorder, PTSD, and dependent and borderline traits. Dr. Wright determined that Oden had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Wright determined that Oden was moderately limited in her ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and respond appropriately to changes in the work setting. Dr. Wright concluded that:

> [Oden's] medically determinable mental impairments do create limitations of function for [Oden]; but these limitations of function do not currently meet or equal . . . listing severity. [Oden's] allegations are consistent with the evidence in file. The preponderance of the medical evidence of record is also consistent and does support [Oden's] limitations of function as discussed in this review.

(Administrative Record at 397.)

On November 23, 2011, Dr. Edward Wilson, M.D., provided DDS with a "Case Analysis" for Oden. Dr. Wilson noted that Oden had multiple orthopaedic complaints, but

8

"no treating source evidence to support more than a short term impairment."[5] Dr. Wilson further noted Oden's consultative exam on April 28, 2011, and the findings of hand, shoulder, and knee pain. Dr. Wilson concluded that "[s]ince the exam of 4-28-11 is now several months out of date, and since the conditions described are time-limited, a return is requested for a current, comprehensive description of findings by a qualified specialist," including of an opinion on Oden's physical functional limitations.[6] Thus, Dr. Wilson recommended Oden undergo a second consultative physical examination.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Oden is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not

---

[5] Administrative Record at 428.

[6] *Id.*

disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Oden had not engaged in substantial gainful activity since January 20, 2011. At the second step, the ALJ concluded from the medical evidence that Oden had the following severe impairments: affective disorder, anxiety disorder, personality disorder, and polysubstance abuse. At the third step, the ALJ found that Oden did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Oden's RFC as follows:

> [Oden] has the residual functional capacity to perform medium work . . . except she can lift or carry occasionally 50 pounds, and frequently 25 pounds; she can stand or walk six hours in an eight-hour day, but no more than two hours continuously; she does not have any restrictions on sitting; she is precluded from stooping, crawling and kneeling; she is precluded from overhead work with the right major upper extremity; she is limited to constant simple repetitive tasks; and she must avoid concentrated exposure to dusts, odors, fumes and pulmonary irritants.

(Administrative Record at 19.) Also at the fourth step, the ALJ determined that Oden was capable of performing her past relevant work as a sorter. Therefore, the ALJ concluded that Oden was not disabled.

### B. Objections Raised By Claimant

Oden argues that the ALJ erred in three respects. First, Oden argues that the ALJ failed to properly consider the opinions of her examining doctors and medical sources, Dr. Munns and Sarah Douglas, and Dr. Roland. Second, Oden argues that the ALJ failed to properly evaluate her subjective allegations of disability. Lastly, Oden argues that the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing.

### 1. *Consultative Examining Sources*

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 416.927(c). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

An ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)).

#### a. *Dr. Munns and Sarah Douglas*

Oden argues that the ALJ failed to properly evaluate the opinions of consultative examining sources, Dr. Munns and Sarah Douglas, a nurse practitioner. Oden maintains the ALJ failed to properly weigh Dr. Munns' and Douglas' opinions. Oden also asserts the ALJ's reasons for discounting Dr. Munns' and Douglas' opinions are not supported by substantial evidence in the record. Oden concludes that this matter should be remanded for further consideration of Dr. Munns' and Douglas' opinions.

In his decision, the ALJ failed to address the opinions of Dr. Munns and Douglas. There is no mention of the opinions of Dr. Munns and Douglas in the ALJ's decision.

Additionally, there is no record of an RFC opinion from a non-examining state agency doctor regarding Oden's physical abilities and limitations. Significantly, the ALJ's RFC for Oden is inconsistent with the opinions of Dr. Munns and Douglas. For example, contrary to the ALJ's findings that Oden is capable of lifting/carrying 50 pounds occasionally and 25 pounds frequently, Dr. Munns and Douglas, *upon examination*, found that Oden could only lift 20 pounds with her left arm and 5 pounds with her right arm. Also contrary the ALJ's RFC assessment, Dr. Munns and Douglas determined that Oden could stand for about 20 to 30 minutes and walk about half of a block, instead of being able to stand and walk six hours in an eight-hour workday as determined by the ALJ. Moreover, Dr. Wilson, a non-examining state agency doctor, who only provided a case analysis for Oden, and not a physical RFC assessment, recommended that Oden undergo a second consultative physical examination before determining her physical functional limitations and level of disability.[7]

Because the ALJ failed to address or take into consideration the opinions of Dr. Munns and Douglas when determining Oden's RFC; and failed to follow Dr. Wilson's recommendation that a second consultative physical examination be ordered for Oden, the Court finds that the ALJ failed to fully and fairly develop the record in this matter. *See Cox*, 495 F.3d at 618. Therefore, on remand, the ALJ must fully consider and address the opinions of Dr. Munns and Douglas when determining Oden's RFC. The ALJ should also order a consultative physical examination for Oden prior to making his RFC determination as recommended by Dr. Wilson. *See Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (providing that an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled); *see also* 20 C.F.R. § 404.1519a(b) ("A consultative examination [may be purchased] to try to resolve an inconsistency in the evidence or when

---

[7] *See* Administrative Record at 428.

the evidence as a whole is insufficient to support a determination or decision on your claim.").

### b. Dr. Roland's Opinions

Oden argues that the ALJ failed to properly evaluate the opinions of Dr. Roland, a consultative examining psychologist. Oden maintains the ALJ failed to properly weigh Dr. Roland's opinions. Oden also asserts the ALJ's reasons for discounting Dr. Roland's opinions are not supported by substantial evidence in the record. Oden concludes that this matter should be remanded for further consideration of Dr. Roland's opinions.

In his decision, the ALJ addressed Dr. Roland's opinions as follows:

> I give less weight to the opinion of the consultative examiner because Dr. Roland did not assess any specific psychological work related limitations, and instead focused on [Oden's] subjective complaints regarding her physical problems.

(Administrative Record at 22.) Contrary to the ALJ's assertion, Dr. Roland *did* assess Oden's psychological abilities and limitations. For example, upon examination, although Dr. Roland found that Oden's memory was "intact for recent and remote events," he determined that her "[i]mmediate retention and recall was impaired as [she] was unable to remember any of 3 unrelated words following a five minute delay."[8] Thus, Dr. Roland opined that Oden's memory problems indicated difficulty remembering 2-step instructions. Furthermore, testing showed symptoms consistent with anxiety disorder and significant depression. Dr. Roland concluded that Oden suffered from major depressive disorder, anxiety disorder, alcohol abuse in early remission, PTSD, and dependent personality traits. Lastly, Dr. Roland suspected that Oden had low borderline intellectual functioning, and recommended further evaluation of her intellectual functioning. Under these circumstances, the Court concludes that the ALJ failed to fully and fairly develop the record with regard to Dr. Roland's opinions. *See Cox*, 495 F.3d at 618. Accordingly, on

---

[8] Administrative Record at 378.

14

remand, the ALJ shall fully and fairly develop the record with regard to Dr. Roland's opinions, and fully explain his reasons for accepting or rejecting Dr. Roland's opinions.

### 2. Credibility Determination

Oden argues that the ALJ failed to properly evaluate her subjective allegations of disability. Oden maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Oden's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or

she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ stated:

> I find [Oden's] allegations concerning the intensity, persistence and limiting effects of her symptoms are less than fully credible because those allegations are greater than expected in light of the objective evidence of record. The evidence of record documented minimal medical treatment. Moreover, the objective medical findings were mild.

> After careful consideration of the evidence, I find that [Oden's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Oden's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the

> extent they are inconsistent with the above residual functional
> capacity assessment.

(Administrative Record at 20.)

The Court finds that the ALJ's decision lacks the required detail for discrediting a claimant and explaining the inconsistencies between the claimant's subjective allegations and the record as a whole. *See Ford*, 518 F.3d at 982; *Baker*, 159 F.3d at 1144; *see also Pelkey*, 433 F.3d at 578 (the ALJ must give reasons for discrediting a claimant). The ALJ barely discusses Oden's general testimony, and offers nothing in terms of the *Polaski* factors and how those factors relate to Oden's subjective testimony and credibility. Instead, the ALJ's only reason for finding Oden's subjective testimony less than fully credible is that her symptoms are not supported by the objective medical evidence in the record or the ALJ's RFC assessment. These are insufficient reasons for discounting Oden's subjective allegations of disability. First, the Eighth Circuit Court of Appeals has stated that an "ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole." *Lowe*, 226 F.3d at 972. Second, as discussed in section *IV.B.1.a* and *b* of this decision, the Court determined that the ALJ failed to consider and properly address the opinions of consultative examining sources, Dr. Munns, Douglas, and Dr. Roland, and remanded this matter for further development of the medical record in this case; thus, calling into question the ALJ's reasoning that Oden's lack of credibility is based on objective medical evidence. Third, the ALJ's decision provides no other reasons for discounting Oden's testimony other than the generic and questionable statement that her allegations are inconsistent with the objective medical evidence and ALJ's RFC assessment. *See Pelkey*, 433 F.3d at 578 (the ALJ must give reasons for discrediting a claimant). Because the ALJ's reasoning is suspect and his decision lacks full consideration of all of the *Polaski* factors, the Court finds that remand is appropriate for the ALJ to further develop the record with regard to Oden's credibility.

On remand, the ALJ shall set forth in detail his reasons for finding Oden's subjective allegations to be credible or not credible. If on remand, the ALJ finds Oden's testimony not to be credible, the ALJ shall fully explain the reasons for his credibility determination and fully explain the inconsistencies between Oden's subjective allegations and the evidence in the record.

### 3. Hypothetical Question

Oden argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of her impairments. Similarly, Oden also argues that the ALJ's hypothetical was incomplete and did not contemplate all of her functional limitations. Oden maintains that this matter should be remanded so that the ALJ may provide the vocational expert with a proper and complete hypothetical question.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

In section *IV.B.1* and *IV.B.2* of this decision, the Court remanded this matter for further consideration of Dr. Munns', Douglas', and Dr. Roland's opinions regarding Oden's impairments, and for further consideration of Oden's subjective allegations of disability. Accordingly, the Court determines that on remand, the ALJ should also reconsider the hypothetical question posed to the vocational expert to make sure that it

captures the concrete consequences of Oden's limitations based on the medical evidence as a whole, including the opinions of Dr. Munns, Douglas, and Dr. Roland, and Oden's own subjective allegations of disability. *See Hunt*, 250 F.3d at 625.

### C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) fully and fairly develop the record with regard to the opinions of Dr. Munns and Douglas, and Dr. Roland; (2) make a proper credibility determination in this matter; and (3) provide the vocational expert with a hypothetical question that captured the concrete consequences of Oden's limitations based on the medical evidence as a whole. Accordingly, the Court finds that remand is appropriate.

## V. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must provide clear reasons for accepting or rejecting the opinions of Dr. Munns and Douglas, and Dr. Roland. The ALJ must support his reasons for accepting or rejection their respective opinions with evidence from the record. The ALJ shall also consider all of the evidence relating to Oden's subjective allegations of disability, and address his reasons for crediting or discrediting those allegations when determining Oden's credibility. Lastly, the ALJ shall also provide the vocational expert with a hypothetical question that captures the concrete consequences of Oden's limitations based on the medical evidence as a whole.

## VI. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 27th day of August, 2014.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA